UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
THE NEW YORK DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS WELFARE          06 CV 13150 (GEL) (JCF)
FUND, NEW YORK CITY DISTRICT COUNCIL OF          ECF CASE
CARPENTERS VACATION FUND, NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS ANNUITY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS APPRENTICESHIP, JOURNEYMAN
RETRAINING, EDUCATIONAL AND INDUSTRY
FUND, NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS CHARITY FUND and NEW YORK
CITY, by their Trustees Michael J. Forde and
Paul O'Brien, and NEW YORK CITY AND VICINITY
CARPENTERS LABOR-MANAGEMENT CORPORATION,

                                Plaintiffs,

          -against-

QUANTUM CONTRACTING CORP. D/B/A
QUANTUM CONSTRUCTION and NOEL GRIFFIN,

                                Defendants.
-------------------------------------------------------------------X

### PLAINTIFFS' PROPOSED FINDINGS OF FACT

Plaintiffs submit the following proposed findings of fact in connection with the inquest on

damages in the above-referenced matter:

1.      Plaintiffs are jointly administered employee benefit plans established under Section

302(c)(5) of the Taft-Hartley Act, 29 U.S.C. Section 186(c)(5).  (Amended Complaint, ¶ 5)

2.      Plaintiffs Michael J. Forde and Paul O'Brien are representative Trustees of the

foregoing Benefit Funds.  (Amended Complaint, ¶ 5)

3.    Plaintiff New York City and Vicinity Carpenters Labor-Management Cooperation Corporation is a New York not-for-profit corporation. (Amended Complaint, ¶ 5) Plaintiffs are collectively known as "the Benefit Funds."

4.    At all relevant times, defendant Quantum Contracting Corp. d/b/a Quantum Construction was a corporation incorporated in the state of New York. (See, Mele Affidavit in Support of Motion for a Default Judgment, ¶ 3)

5.    At all relevant times, defendant Quantum was an employer in an industry affecting commerce within the meaning of ERISA, Sections 3(5), (11), and (12), 29 U.S.C. §§ 1002(5), (11), and (12), and Sections 2(2), (6), and (7) of the Labor Management Relations Act, 29 U.S.C. §§ 152(2), (6), and (7). (Amended Complaint, ¶ 7)

6.    At all relevant times, defendant Noel Griffin was the President and the Principal Operating Officer of Quantum. (Amended Complaint, ¶ 8)

7.    Defendant Quantum Contracting Corp. d/b/a Quantum Construction was bound at all relevant times by a collective bargaining agreement with the District Council for New York City and Vicinity, United Brotherhood of Carpenters and Joiners of America ("District Council"), which, by its terms, required defendant Quantum to make contributions to the plaintiff Benefit Funds for each hour worked by carpenters performing covered work to pay for fringe benefit, including but not limited to, medical and hospitalization insurance, pension, annuity and vacation. (Amended Complaint, ¶¶ 10-11) (Exhibit 3)

8.    Plaintiffs' Exhibit 3 is a copy of the Building Construction Agreement, which was binding on defendant Quantum as a member of the Building Contractors Association. (Giudice Decl., ¶ 3)

9. Pursuant to the collective bargaining agreement, also known as the Building Construction Agreement, defendant Quantum made some fringe benefit contributions to the plaintiff Benefit Funds for hours worked by carpenters performing covered work. Plaintiffs' Exhibit 4 sets forth the fringe benefits paid by Quantum.

10. Plaintiffs' Exhibit 5 are shop steward reports indicating on a weekly basis the reported hours worked by carpenters assigned to a Quantum job site. (Danielson Decl., ¶ 2)

11. In 2004, the plaintiff Benefit Funds conducted an audit of defendant Quantum, which resulted in a finding of a fringe benefit liability in the amount of $155,591.85. (Exhibit 7)

12. Due to Quantum's failure to pay the deficiency, the matter proceeded to arbitration, which resulted in an award of $188,977.95 for the plaintiff Benefit Funds, with interest. (Exhibit 8)

13. On March 6, 2006, the arbitration award was confirmed by the Hon. Alvin K. Hellerstein, and judgment for the plaintiffs and against Quantum was entered in the principal amount of $188,977.95, plus interest, attorney's fees, and costs. (Exhibit 9)

14. In 2005, the plaintiff Benefit Funds received information that defendant Quantum was utilizing a concealed checking account with Chase to routinely defraud plaintiffs and the District Council, by paying its carpenter employees without making required fringe benefit contributions. (Polvere Declaration, ¶ 11)

15. The plaintiff Benefit Funds attempted to conduct an audit of defendant Quantum's books and records. However, neither Quantum nor Noel Griffin, Quantum's principal, cooperated with the audit, and no books and records were provided to plaintiffs or their auditor.

16.     Plaintiffs' forensic auditor's did conduct a forensic audit of Quantum's Chase account 748501037565, and concluded that Quantum failed to remit contributions required to be paid to the plaintiff Benefit Funds for work performed by its covered employees for the period October 25, 2002 to January 15, 2005, and is delinquent and deficient in the estimated principal sum of $364,485.86. (Polvere Declaration, ¶¶ 15, 32)

17.     Plaintiffs' Exhibit 1 is a schedule of each check from the Chase account made to an individual. (Polvere Decl., ¶ 25)

18.     Plaintiffs' Exhibit 2 is a schedule detailing plaintiffs' forensic auditor's analysis of the fringe benefits owed. (Polvere Decl., ¶ 28)

19.     Defendant Quantum's refusal and failure to remit required contributions is a violation of the collective bargaining agreement, the Agreements and Declarations of Trust establishing the Funds, to which, at all relevant times, Quantum was bound, ERISA, and the plaintiff Funds' collection guidelines. (See, Mele Affidavit in Support of Motion for a Default Judgment, ¶ 15)

20.     Defendant Noel Griffin, the President of Quantum, acting by himself and/or in concert with persons acting under his direction and control, engaged in a concerted and systematic scheme to defraud the Funds of contributions required to be paid on behalf of Quantum's carpenter employees by: (a) paying carpenters, or causing carpenters to be paid in cash and/or "off the books" for the purpose of avoiding the required fringe benefit fund contributions to the Funds; and by (b) submitting and/or communicating, or causing Quantum to submit and/or communicate, false reports and information to the Funds or its agents that deliberately omitted covered employees. (Amended Complaint, ¶ 17)

21.     At times between 2003 through 2004, defendant Griffin, acting by himself and/or in concert with persons acting under his direction and control defrauded the Funds by providing reports and information to the Funds that deliberately omitted covered employees for whom contributions were required to be made. (Amended Complaint, ¶ 18)

22.     At times between 2003 through 2004, defendant Griffin, acting by himself and/or in concert with persons acting under his direction and control defrauded the Funds by providing reports and information to the Funds that deliberately omitted covered employees for whom contributions were required to be made. (Amended Complaint, ¶ 19)

23.     Defendant Griffin knew the documents and reports of carpenters employed and the hours they worked were false when made. (Amended Complaint, ¶ 21)

24.     Defendant Griffin knew the Funds relied upon the representations of hours worked and carpenters employed that were made to the plaintiff Funds and/or its agents in calculating Quantum's liability for fringe benefit contributions. (Amended Complaint, ¶ 22)

25.     The plaintiff Funds justifiably relied upon the hours reported by Quantum. (Amended Complaint, ¶ 23)

26.     As a result of defendant Griffin's knowing, willful, and deliberate acts of fraud against the plaintiff Funds, Quantum failed to remit contributions and/or failed to remit all contributions required to be paid to the plaintiff Funds for work performed by its covered employees for the period October 25, 2002 to January 15, 2005, and is delinquent and deficient in the principal sum of $364,485.86.

27.     On November 13, 2006, plaintiffs commenced the instant action by filing a summons and complaint.  Plaintiffs subsequently filed the Summons on Amended Complaint and Amended Complaint on July 26, 2007.  Defendants were properly served.

28.     Defendants never interposed an answer to the Complaint or Summons on Amended Complaint.

29.     On February 22, 2008, plaintiffs moved for a default judgment against Quantum Contracting Corp., and Noel Griffin as to liability.

30.     On March 6, 2008, the Hon. Gerard E. Lynch entered a default judgment against defendants Quantum and Griffin, and granted plaintiffs 60 days to submit evidence to support the monetary relief requested.

31.     On March 6, 2008, by order of the Hon. Gerard E. Lynch, this matter was referred to this Court for an inquest into damages after default.

32.     On May 5, 2008, plaintiffs submitted declarations and documentary evidence in support of their request for money damages, attorneys' fees, and costs.

### PLAINTIFFS' PROPOSED CONCLUSIONS OF LAW

33.     Plaintiffs have met their burden in establishing the amount of damages owed to the plaintiff Benefit Funds by defendants.

34.     As the Court has already granted plaintiffs default judgments against defendants Quantum and Griffin as to liability, the sole issue before this Court is whether plaintiffs have provided support for the monetary relief they seek. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158-59 (2d Cir. 1992).

35.     As a result of defendants' default, the Court accepts as true all the allegations of the Amended Complaint, except those relating to damages. <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.</u>, 109 F.3d 105, 108 (2d Cir. 1997); <u>Bambu Sales, Inc. v. Ozak Trading Inc.</u>, 58 F.3d 849, 854 (2d Cir. 1995); <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158-59 (2d Cir. 1992); <u>Bank of America Corp. v. Braga Lemgruber</u>, 2007 WL 4548298 * 2 (S.D.N.Y. July 10, 2007).

36.     "In the calculation of damages, Plaintiffs are entitled to all reasonable inferences from the evidence they offer." <u>Bank of America Corp. v. Braga Lemgruber</u>, 2007 WL 4548298 * 2 (S.D.N.Y., July 10, 2007) (internal citations omitted).

37.     "When a party has defaulted, damages can be based 'upon probable and inferential, as well as direct and positive proof . . . imposing on the wrongdoer any risk of uncertainty which his own wrong created.'" <u>Bank of America Corp. v. Braga Lemgruber</u>, 2007 WL 4548298 * 2 (S.D.N.Y., July 10, 2007), quoting, <u>Trans World Airlines, Inc. v. Hughes</u>, 449 F.2d 51, 73 (2d Cir., 1971), reversed on other grounds, 409 U.S. 363, 93 S. Ct. 647 (1973).

38.     In determining the amount of damages, the Court "may rely on detailed affidavits or documentary evidence . . . to evaluate the proposed sum." <u>Fustok v. Conticommodity Services, Inc.</u>, 873 F.2d 38, 40 (2d Cir., 1989).

39.     It is not necessary for the Court to hold a hearing so long as there is a basis for the damages awarded. <u>Id.</u>

40.     Plaintiffs' declarations and exhibits provide sufficient basis for an award of damages in the principal amount of $364,485.86 against the defendants Quantum and Griffin.

41.     The declaration of plaintiffs' forensic auditor, Gregory Polvere, provides in detail his analysis of the records reviewed, and the basis for his conclusion that $364,485.86 in outstanding fringe benefit contributions are owed to plaintiffs by defendants.

42.     Mr. Polvere's ability to review and analyze all of Quantum's books and records was limited by the fact that Quantum refused to cooperate in his audit, and failed to appear and produce any records in this action.

43.     However, Mr. Polvere was able to analyze the cancelled checks from Quantum's Chase account 748501037565.  (Polvere Decl., ¶ 13)

44.     Plaintiffs' Schedule B details each payment made by Quantum to individuals for covered work from the Chase account, explaining the wage rate to derive at the hours worked and the fringe benefits owed for each individual. (Polvere Decl., ¶¶ 28-30)

45.     In order to avoid Quantum being "double billed" for hours worked by carpenters, plaintiffs' forensic auditor eliminated those checks which were included in the prior audit conducted by plaintiffs in 2004, for which they already have a judgment. (Polvere Decl., ¶ 27)

46.     Mr. Polvere's Schedule A is a complete list of checks to all individuals paid from the Chase account, including those checks included in the prior 2004 audit.

47.     Plaintiffs' forensic auditor's conclusions are based on probable and inferential, as well as direct proof.

48.     The direct proof includes the fact that of the 152 individuals paid from the Chase account, there were 40 individuals for whom Quantum had paid fringe benefits to the plaintiff Benefit Funds in the past. (Polvere Decl., ¶ 21)

49.    For some of these 40 individuals, there is already a judgment against defendant Quantum for fringe benefit contributions owed.  (Polvere Decl., ¶ 27; Exhibit 7 (2004 audit report))

50.    In addition, of the 40 payees for whom prior remittances were made, 32 were also on shop steward reports. (Polvere Decl., ¶ 21)

51.    Being on a shop steward report is direct proof that the individual was performing covered work for Quantum.  (Danielson Decl., ¶¶ 2, 6)

52.    The inferences drawn from plaintiffs' proof are reasonable.  Several of the checks analyzed reference the number of hours worked by the payee, and the rate of pay.  (Polvere Decl., ¶¶ 18-19)  In addition, checks were paid to individuals on a regular basis.  (Polvere Decl., ¶ 20)  From these checks, one can infer that the checks were for labor.

53.    Absent evidence from defendants showing the precise work performed by the individuals paid from the Chase account, and the precise number of hours worked, the conclusions of plaintiffs' forensic auditor must control.  See, <u>Grabois v. Action Acoustics, Inc.</u>, 1995 WL 662127 (S.D.N.Y. November 9, 1995).

54.    ERISA requires that "every employer shall . . . , maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees."  29 U.S.C.A. § 1059(a)(1).

55.    ERISA's affirmative requirement "forces employers 'to furnish to benefit plans the information needed for the plans' fulfillment of their reporting duties.'"  <u>Grabois v. Action Acoustics, Inc.</u>, 1995 WL 662127 * 2 (S.D.N.Y., November 9, 1995), quoting, <u>Central States,</u>

<u>Southeast and Southwest Areas Pension Fund v. Central Transport Inc.</u>, 472 U.S. 559, 573 (1985).

56.     The Second Circuit has not addressed the issue of the standard to apply when an employer fails to maintain adequate records and a benefit fund contests the contributions owed by the employer.  The Sixth, Ninth, and Eleventh Circuits have all held "that a fund's . . . production of evidence raising genuine questions concerning an employer's failure to maintain adequate records shifts to the employer the burden of coming forward with evidence either of the precise number of hours worked or to negate the reasonableness of the inferences to be drawn from the plaintiff fund's evidence."  <u>Grabois v. Action Acoustics, Inc.</u>, 1995 WL 662127 * 2 (S.D.N.Y., November 9, 1995), citing, <u>Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.</u>, 30 F.3d 692, 696-697 (6th Cir. 1994); <u>Brick Masons Pension Trust v. Industrial Fence & Supply Inc.</u>, 839 F.2d 1333, 1338 (9th Cir. 1988); <u>Combs v. King</u>, 764 F.2d 818, 825-826 (11th Cir. 1985).

57.     The plaintiff Benefit Funds have submitted evidence sufficient to shift the burden to defendants.

58.     The facts of this case are distinguishable from the facts in <u>Mason Tenders District Council Welfare Fund v. M.A. Angeliades, Inc.</u>, 2007 WL 4208587 (S.D.N.Y. November 20, 2007).  The parties in <u>Angeliades</u> were also jointly-administered employee benefit funds and a signatory employer.  In <u>Angeliades</u>, after commencement of the action, the plaintiffs conducted a payroll audit of the employer, which included a claim for fringe benefits owed for work covered under the collective bargaining agreement.  The employer fully participated in the audit, and provided all books and records requested by the auditors, including payroll forms, tax

filings, journals and ledgers. Upon completion of the audit, the auditor concluded that the records were accurate, and "found no discrepancies between what . . . [the employer] reported to the union and what the shop stewards . . . reported. Id., at * 4.

59. The court in Angeliades held that because the plaintiffs failed to establish the inaccuracy of defendants' records, the plaintiffs bore the burden of proof to establish the fringe benefits owed. Id., at * 7. In finding that the plaintiffs failed to meet their burden of proof, the court found each of the three assumptions made by the auditor to be unreasonable and speculative.

60. The auditor assumed that "if an individual earned at a rate even remotely close to a mason tenders' rate, all of his hours were included." Id., at * 5. The court found that the type of work performed by mason tenders made this assumption unreasonable. The court held that contrary to skilled workers such as carpenters and electricians, mason tenders perform simple tasks, and therefore the rates earned by mason tenders are virtually the same as rates earned by other trades that perform miscellaneous simple tasks. The fact that an individual earned a rate close to a mason tenders' rate did not mean that the individual was performing mason tenders work.

61. The auditor's second assumption was that "if an individual was listed on even one shop steward report during the entire four-year period covered by the audit, all of his hours worked for the company were included, regardless of what that individual was doing on the days in which he is not found on any shop steward report." Id. The court found this assumption also unreasonable, because "the shop stewards did not generally report the individuals alleged to have unreported hours as having performed covered work during the periods in question." Id., at

* 6. "The significant discrepancies between the shop steward report data and the unreported hours found by the audit cast grave doubt on the assumptions which were reflected in the audit." Id.

62.    The auditor's final assumption was that "if any individual became a member of the union at any point in time, all of his hours were to be included regardless of what duties the employee performed prior to joining the union." Id., at * 5. In finding this last assumption also unreasonable, the court held that while the assumption "may be somewhat reasonable if this matter involved electricians, plumbers, operating engineers or other licensed and professionally skilled trades, which require a substantial amount of training and experience, the same cannot be said for mason tenders, whose general job duties include sweeping, cleaning, and demolition work." Id., at * 6.

63.    This case is distinguishable from Angeliades in several ways. Contrary to the employer in Angeliades, defendant Quantum did not cooperate with the plaintiff Benefit Funds' audit of their books and records. Quantum did not provide plaintiffs or their auditor the books and records to review. Despite being properly served with the Amended Summons and Amended Complaint, neither Quantum nor Griffin answered the Amended Complaint nor appeared in this action. As defendants have defaulted in this action, all of plaintiffs' factual allegations as alleged in the Amended Complaint are accepted as true.

64.    Therefore, plaintiffs have established that defendant Quantum failed to remit contributions and/or failed to remit all contributions required to be paid to the plaintiff Benefit Funds for work performed by its covered employees. (Amended Complaint, ¶ 14)

65.     Plaintiffs have established that defendant Noel Griffin submitted false reports to the plaintiff Benefit Funds that deliberately omitted covered employees.  (Amended Complaint, ¶ 17)

66.     Plaintiffs have established that defendant Noel Griffin submitted shop steward reports to the District Council of Carpenters that deliberately omitted covered employees for whom he knew Quantum was required to make contributions for. (Amended Complaint, ¶ 20)

67.     Plaintiffs have established that no fringe benefits were paid by Quantum to the plaintiff Benefit Funds for those individuals paid from Quantum's concealed account with JP Morgan Chase.

68.     Contrary to the employer in Angeliades, defendant Quantum has failed to produce any books and records.  Quantum has failed to comply with ERISA's requirement to furnish to the benefit funds records sufficient to allow them to determine fringe benefits owed. 29 U.S.C.A. § 1059(a)(1)   In addition, there is a prior judgment against Quantum based on an audit in which the plaintiffs' auditors concluded that Quantum's books and records were inaccurate.

69.     The plaintiff Benefit Funds have raised genuine questions concerning defendant Quantum's failure to maintain adequate records sufficient to shift the burden to Quantum "of coming forward with evidence either of the precise number of hours worked or to negate the reasonableness of the inferences to be drawn from the plaintiff fund's evidence." Grabois v. Action Acoustics, Inc., 1995 WL 662127 * 2 (S.D.N.Y., November 9, 1995).

70.     Assuming, *arguendo*, that the burden did not shift to Quantum, and plaintiffs bore the burden to prove the fringe benefits owed, the assumptions made by plaintiffs' forensic auditor are reasonable.

71.     Plaintiffs have established that prior remittances had been paid for 40 out of the 152 individuals paid from Quantum's account with Chase, leading to the strong inference that those same individuals were performing covered work for defendant Quantum.

72.     Plaintiffs have established that 32 of the 40 payees for whom prior remittances were paid were also on shop steward reports, again raising the strong inference that the work those same individuals were being paid for from the Chase account was covered work

73.     Contrary to the work of mason tenders, work performed by carpenters is highly skilled, and as such, carpenters do not earn a basic rate similar to most construction workers such as mason tenders, laborers, and tapers.  On the contrary, carpenters command rates similar to operators and electricians.

74.     Therefore, plaintiffs' assumption that a carpenter for whom prior fringe benefits were paid for by Quantum, and who was paid by Quantum from their concealed Chase account was performing covered work is reasonable and realistic.  A highly skilled worker such as a carpenter is unlikely to be performing low skilled work such as "picking up materials, assisting project managers, driving a truck, or working in a warehouse or yard." Angeliades, *supra*, * 5.

75.     For the same reason, plaintiffs' assumption that a carpenter who was on a shop steward report as performing covered work, but who was not on a shop steward report for those hours paid from the concealed Chase account was also performing covered work, is also reasonable.  Furthermore, it has been established that Quantum underreported the hours worked

by its carpenter employees in the shop steward reports provided to the union. (Amended Complaint, ¶ 20; Polvere Decl., ¶ 36; Danielson Decl., ¶ 7)

76.    As the plaintiffs Benefit Funds have provided sufficient evidence to shift the burden of proof onto the defendants, and defendants have failed to present evidence contradicting plaintiffs' findings, the conclusions of plaintiffs' forensic auditor must control. See, Hanley v. Orient Beach Club, Inc., 1998 WL 65990 (S.D.N.Y. February 18, 1998) (citing with approval the 9th and 11th Circuits' allocation of the burdens in the ERISA context, and finding that if the plaintiff Funds submit the audit report and the auditor's expert opinion testimony to the Court, the burden would then shift to defendant to disprove the audit amount); Michigan Laborers' Health Care Fund, et al. v. Grimaldi Concrete, Inc., et al., 30 F.3d 692, 697 (6th Cir., 1994) (where "it is impossible to determine with any precision the amount of contributions due to the Funds . . . an employer is liable for contributions on all hours worked during a period in which it has been demonstrated that some covered work was performed.").

77.    For the reasons provided, the plaintiff Benefit Funds are entitled to an award in the principal amount of $364,485.86.

78.    Under ERISA, plaintiffs are also entitled to interest on the unpaid contributions; liquidated damages in the amount of 20% of the unpaid contributions; reasonable attorney's fees, and costs. ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2).

79.    An award of interest is mandatory in this case. Mason Tenders District Council v. Aurash Construction Corp., 2006 WL 647884 * 2 (S.D.N.Y. March 16, 2006).

80.     Interest on unpaid contributions is determined by using the rate provided under the plan, or, if none, the rate prescribed by 26 U.S.C. § 6621. ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2).

81.     The interest rate provided under the agreement to which Quantum is bound, is the prime rate of Citibank plus 2%. (Exhibit 3)

82.     An award of statutory damages is also mandatory in this case. <u>Iron Workers District Council of Western New York and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.</u>, 68 F.3d 1502, 1506 (2d Cir., 1995).

83.     As the prevailing parties, plaintiffs are entitled to reasonable attorney's fees and costs. ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2); <u>Iron Workers</u>, 68 F.3d at 1506.

84.     Reasonable attorney's fees are calculated using the "lodestar" method. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433, 103 S.Ct.1933, 1939 (1983); <u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 885 F.2d 1053, 1059 (2d Cir., 1989).

85.     In support of their application for fees and costs, plaintiffs have submitted declarations setting forth the attorney services expended in the litigation, as well as contemporaneous time records. <u>New York State Association for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir., 1983).

86.     Plaintiffs' declarations and supporting declarations submitted in support of their application for fees are sufficiently detailed for the Court to determine the reasonableness of the fees requested.

87.     The hourly rates requested are well within the range of hourly rates awarded within this District for ERISA actions. <u>McDonald v. Pension Plan of the NYSA-ILA Pension</u>

<u>Trust Fund</u>, 450 F.3d 91 (2d Cir., 2006) (affirming hourly rate of $325 for a solo practitioner);

<u>Sewell v. 1199 National Benefit Fund for Health and Human Services</u>, 2007 WL 1434952

(S.D.N.Y. May 15, 2007) (approving hourly rates of $305 for partner, $270 for senior associate,

and $90 for paralegal, but noting that the requested partner and associate rates were below

market rate); <u>Sheehan v. Metropolitan Life Insurance Company</u>, 450 F.Supp.2d 321 (S.D.N.Y.

2006) (awarding hourly rates of $425 for the senior partner, $375.00 for the junior partner, $300

for associates, and $150 for paralegals); <u>Mingoia v. Crescent Wall Systems</u>, 2004 WL 1885952

(S.D.N.Y. August 23, 2004) (awarding hourly rate of $325.00).

88.     Plaintiffs' request for attorneys' fees totaling $22,876.25 is reasonable.

89.     Plaintiffs' request for costs totaling $2,505.50 is reasonable.

90.     Plaintiffs also request the fees associated with the forensic audit conducted by

Gregory J. Polvere. (Mele Declaration, ¶¶ 16-18; Polvere Declaration, dated May 6, 2008,

Exhibits 12)

91.     The courts in similar cases have awarded auditors' fees. <u>Mason Tenders</u>

<u>District Council v. Aurash Construction Corp.</u>, 2006 WL 647884 * 4 (S.D.N.Y., March 15,

2006); <u>Mason Tenders District Council v. Envirowaste and Transcontractors, Inc.</u>, 1999 WL

370667 * 2 (S.D.N.Y., June 7, 1999).

92.     Under ERISA the court has authority to award any legal or equitable relief the

court deems appropriate. 28 U.S.C. § 1132(g)(2)(E).

93.     In addition, the Building Construction Agreement, to which defendant Quantum

is bound, tracks the relief allowed under ERISA. (Exhibit 3, p. 44)

94.     Plaintiffs are also entitled to prejudgment interest against defendant Noel Griffin based on their pendent state law fraud claim against defendant Griffin.

95.     The CPLR provides that "[i]nterest shall be recovered upon a sum awarded because . . . of an act or omission depriving or otherwise interfering title to, or possession or enjoyment of, property . . ." CPLR § 5001(a).

96.     A cause of action based upon fraud qualifies for the recovery of prejudgment interest. Huang v. Sy, 2008 WL 553646 * 12 (Sup.Ct. Queens Co., February 28, 2008); see also, Lukaszuk v. Sudeen, 2007 WL 4699018 (E.D.N.Y. November 27, 2007).

97.     Plaintiffs have already been awarded judgment against defendant Griffin as to liability in their common law fraud claim.

98.     Prejudgment interest should be awarded to plaintiffs at the rate of 9%. CPLR § 5004.

99.     Plaintiffs are entitled to the following relief:

a.      judgment against defendants Quantum and Griffin, jointly and severally, in the principal amount of $364,485.86, representing the fringe benefit liability owed to the plaintiff Benefit Funds;

b.      liquidated damages against defendant Quantum in the amount of $72,897.17, which is 20% of the unpaid contributions;

c.      interest against defendants Quantum and Griffin, jointly and severally, at the prime rate of Citibank plus 2%;

d.      prejudgment interest against defendant Griffin at the rate of 9%; and

e.      attorneys' fees, costs and forensic auditor fees as against defendant

Quantum in the amount of $34,404.25.

Dated: May 6, 2008
New York

Yours, etc.,

O'DWYER & BERNSTIEN, LLP
Attorneys for Plaintiffs

By: _____
JOY K. MELE (JM0207)
52 Duane Street, 5th Floor
New York, New York 10007
(212) 571-7100